IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARY ELIZABETH DURKIN                                                    PLAINTIFF

V.                              NO. 13-5120

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration      DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Mary Elizabeth Durkin, brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. <u>See</u> 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff filed her application for DIB on November 20, 2009, alleging disability since March 18, 2009,[1] due to scoliosis of the spine. (Tr. 31, 108-109, 124, 128). As indicated by the ALJ, Plaintiff has acquired sufficient quarters of coverage to remain insured through September 30, 2011. (Tr. 12). Accordingly, the relevant time period in this case is March 18, 2009 to

---

[1] Although Plaintiff initially indicated her onset date was June 1, 2008, at the hearing before the ALJ, Plaintiff's counsel stated that he would amend her onset date to March 18, 2009, because "that's the last date she actually worked." (Tr. 31).

September 30, 2011. An administrative hearing was held on October 21, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 26-50).

By written decision dated January 27, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - scoliosis status post fusion x 2; degenerative disc disease; deep vein thrombosis; a bipolar disorder; posttraumatic stress disorder; and borderline personality disorder. (Tr. 14). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> occasionally lift and/or carry 10 pounds; frequently lift and/or carry up to 10 pounds; stand and/or walk at least 2 hours out of an 8-hour workday; sit for at least 6 hours out of an 8-hour workday (all with normal breaks) (Sedentary work is defined in 20 CFR 404.1567(a) [ ) ] except she is limited to simple, repetitive tasks and having no more than incidental contact with the public.

(Tr. 16). With the help of a vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff was unable to perform any past relevant work, but there were other jobs Plaintiff would be able to perform - touch-up inspector and table worker. (Tr. 20-21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on April 26, 2013. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are

presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for

at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC).  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III.    Discussion:

Plaintiff was born in 1979 and underwent surgery in 1996 for progressive scoliosis. (Tr. 204).  During the relevant time period, Plaintiff continued to complaint of back pain. (Tr. 262, 372). At the hearing held on October 21, 2011, Plaintiff stated that she had surgery on February 7, 2011, for her scoliosis. (Tr. 32). She stated that after her surgery in 1996, she did "okay" for several years and continued working and started having difficulties again in 2008. (Tr. 33). She stated that her scoliosis had become progressive. (Tr. 33). She testified that the new surgery "has gone all the way through my spine down to my tailbone. I am in considerable pain most days." (Tr. 33).

One of the relevant medical records in this case is one dated April 15, 2009, of Dr. Lawrence G. Lenke, of Washington University in St. Louis, who reported that Plaintiff was

referred to him for evaluation of scoliosis. (Tr. 262). Dr. Lenke reported that Plaintiff had little muscle tone generally, and that range of motion in the lumbar spine was limited, but Plaintiff was able to bend down and touch just below her knees with forward flexion and substantial hamstring tightness. (Tr. 263). He found she was 5/5 neurologically, sensation to light touch was intact, and deep tendon reflexes were symmetric and within normal limits. (Tr. 263). Dr. Lenke noted that Plaintiff had a progressive deformity and pain, and his diagnosis was as follows:

> 1. Adolescent idiopathic thoracolumbar scoliosis, status post single Harrington rod and Wisconsin wires T10 to L3.
> 2. Progressive deformity and degeneration below at L3-4, 4-5 and 5-1.
> 3. Thoracic hyperkyphosis and also lumbar kyphosis due to distraction instrumentation.

(Tr. 265). Dr. Lenke also reported that Plaintiff had "rather mid stage symptoms of flat back syndrome and degeneration below her fusion and also above it with kyphosis." (Tr. 265). In order to correct it, Dr. Lenke opined:

> To correct all of this would require a fairly major reconstruction with removal of implants, Smith-Petersen osteotomy to realign her sagittal plane and extension to the sacrum/ilium. Decompressions and TLIFs and then extension up above her kyphosis as well. Ultimately T4 to sacrum and ilium instrumentation and fusion. This is a fair amount of surgery and they are interested because her quality of life is so low. We will give them some reading information and talk to Kelly and see us back for preoperative visit and discuss this further.

(Tr. 265). On October 5, 2009, a record from Dr. Lenke's office reported that Plaintiff called stating her mother cancelled her cobra insurance because she did not want Plaintiff to go through with the surgery - she therefore had to cancel the surgery. (Tr. 269).

There are no records from the February 2011 surgery in the transcript. At the hearing, Plaintiff's attorney told the ALJ that Plaintiff had surgery recently in St. Louis in February, and

"she's had some problems that have developed that have required to go back in April and she needs to get those records." (Tr. 29). The attorney asked the ALJ to keep the record open for thirty days, in order to obtain the records, as well as some other medical records. (Tr. 29). The ALJ agreed to keep the record open for 30 days. (Tr. 29). In his decision, the ALJ noted as follows:

> The claimant testified that she had some type of surgery for her scoliosis in February 2011. The record has been kept open for 90 days at this point to obtain these records. No additional evidence has been received as of the date of this decision. The claimant provided no records as to her surgery in February 2011; however, records from Ozark Orthopedic and Sports Medicine Clinic indicate that she had a revision of her fusion (Exhibit 15F, page 23). On August 23, 2011, the claimant stated she had increased pain with increased activity, "lots of walking", and bending (Exhibit 15FG, page 23). On October 6, 2011, the claimant stated her back felt stiff (Exhibit 15F, page 3). There is no doubt that the claimant's scoliosis would cause some pain and the undersigned has limited the claimant to sedentary work activity due to her inability to perform prolonged walking and standing.

(Tr. 18).

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000). This is particularly true when Plaintiff is not represented by counsel. Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record

is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." Mouser v. Astrue, 545 F.3d 634, 639 (8th Cir. 2008)(citation omitted).

What troubles the Court is the fact that there is no indication that either Plaintiff's attorney or the ALJ sought the opinion of the surgeon who performed surgery on Plaintiff in February of 2011. The Court believes this surgeon's opinion is important because it is necessary for the Court to understand what impact her condition had upon her ability to perform work related activities after her February surgery.

Accordingly, the Court believes remand is necessary to allow the ALJ to obtain a Physical RFC Assessment from the surgeon who operated on Plaintiff in February of 2011, or to submit interrogatories to him. The ALJ should then re-evaluate Plaintiff's RFC.

The Court notes that based upon this remand, Plaintiff will have the opportunity to request attorney's fees. If such fees are requested, the Court requests the attorneys for Plaintiff and Defendant to address the question of whether fees are appropriate under the facts of this case, as Plaintiff was asked to submit the records in question by the ALJ and failed to do so.

**IV.    Conclusion:**

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, should be remanded to the Commissioner for further consideration

AO72A
(Rev. 8/82)

pursuant to sentence four of 42 U.S.C. § 405(g).

ORDERED this 17th day of June, 2014.

*/s/ Erin L. Setter*
HONORABLE ERIN L. SETTER
UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**